UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROBERT K. BROWN,

               Plaintiffs,

      -v-                                         No.  12CV3146-LTS-GWG

THE CITY OF NEW YORK et al.,

               Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Plaintiff Robert K. Brown ("Plaintiff") brings this action against Defendants the

City of New York ("City of New York") and New York City Police Department ("N.Y.P.D.")

Officers Marcus McCoy ("McCoy") and Stephen Janec[1] ("Janec," collectively, "Defendants"),

pursuant to 42 U.S.C. § 1983, asserting federal claims for false arrest, unlawful imprisonment

and malicious prosecution, as well as state law claims for false arrest and intentional infliction of

emotional distress, stemming from Plaintiff's December 13, 2010, arrest and subsequent

imprisonment.[2]  Defendants move for summary judgment, pursuant to Federal Rule of Civil

Procedure 56, arguing that there was probable cause to arrest the Plaintiff; that any search and/or

imprisonment of the Plaintiff was lawful; that Plaintiff fails to state a claim for malicious

prosecution; and that, to the extent that Plaintiff intends to bring any state law claims, those

claims are meritless.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and

---

[1]     Plaintiff refers to Defendant Janec as "Janee" in his papers.

[2]     In his Complaint and his opposition to Defendants' Motion for Summary
Judgment, Plaintiff also appears to allege that he was subject to an unlawful
search, although he does not assert this as a separate claim.

1367.  The Court has considered carefully the parties' submissions and arguments and, for the following reasons, the Defendants' motion is granted in its entirety.

BACKGROUND[3]

Plaintiff was arrested on December 13, 2010, shortly after 1:00 p.m., in the vicinity of 84th Street and Park Avenue in Manhattan, New York.  (Def. 56.1 St. ¶ 8.)  Earlier that day, two men, identified as E.K. and O.M., had called the authorities to report that the van that they were using, which belonged to Wynne Plumbing and Heating, had been broken into while it was parked on 85th Street.  (Id. ¶ 6.)  Defendants McCoy and Janec responded to the complaint, which they heard about over the police radio.  (Id. ¶ 7.)[4]

---

[3]    Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

[4]    Plaintiff argues that there was no 911 call made to the police officers.  (Pl 56.1 St. ¶ 6; see also Pl. Mem. In Opp. (ECF docket entry no. 43) at ECF pp. 40, 55.)  Although Plaintiff cites to a New York City Police Department "Stop, Question & Frisk Report," which indicates that the police officers were not on a radio run on the afternoon of Plaintiff's arrest (see id., Ex. F); the New York City Police Complaint Report from the same incident indicates that the victims' complaint was received by the police over the radio (see Declaration of Aimee K. Lulich ("Lulich Decl."), Ex. E).  For the purposes of the instant motion, it does not matter how the police officers first heard about the complaint, as the victims identified the Plaintiff once the officers had arrived on the scene.

The two complainants, E.K. and O.M., told Officer McCoy that they had seen Plaintiff in the driver's seat of the van, attempting to start the ignition in the van and that, when E.K. followed Plaintiff as he attempted to flee, the Plaintiff waved a hammer near E.K.'s face and said something to the effect of "wait a second." (Def. 56.1 St. ¶¶ 9-11.) Officer Janec's memo book indicates that he watched a surveillance video of the parked van at 1:25 p.m., after Plaintiff was arrested. (Lulich Decl., Ex. L.) In his opposition to Defendants' motion for summary judgment, Plaintiff repeatedly alleges that, because he cannot be seen in the video, it exonerates him, and that McCoy violated his rights and was complicit in a false arrest and malicious prosecution by suppressing or withholding the "exculpatory" video. The Court has reviewed the security video, a copy of which was provided to the Court by the Defendants. It shows only a partial view of the van and neither the passenger side door of the van, through which the Plaintiff is accused of having entered, nor pedestrian traffic approaching the door on that side of the vehicle is visible. (Lulich Decl., Ex. M.)

E.K. and O.M. identified Plaintiff as the person who had broken into their van and he was arrested near the scene of the crime, at 84th Street and Park Avenue. (Def. 56.1 St. ¶¶ 7-9.) When he was arrested, a backpack containing, among other things, a hammer, screwdrivers and a knife, was vouchered as evidence belonging to the Plaintiff. (Lulich Decl., Ex. H.) Plaintiff denies that the hammer, screwdrivers and knife were his, and asserts that they were actually plumbing tools belonging to E.K. and O.M. that were found on the ground. (Pl. 56.1 St. ¶ 7; Pl. Mem. in Opp. (ECF docket no. 43) at ECF p. 63.) Plaintiff also alleges that he had been "in a pizzaria[sic] having coffee-tea and pastries with a woman at 86th Street and the corner of Lexington Avenue," and then had walked up 84th Street to Park Avenue to pick up a car that he had borrowed, before he was arrested. (Pl. 56.1 St. ¶ 7; Pl. Mem. in Opp. at ECF p. 21.)

Plaintiff contends that Defendants McCoy and Janec pulled up in the police car next to Plaintiff and jumped out of the car, that one of the police officers had a gun in his hand and that they handcuffed the Plaintiff and forcefully searched him before putting him in the back seat of the police car.  (Pl. Mem. in Opp at ECF p. 21.)

Plaintiff alleges that he was then made to wait in the police car with the heater running full blast and that, as a diabetic with high blood pressure and asthma, he suffered from having his blood circulation restricted by the handcuffs with the heat running so high.  (Id.)  According to Plaintiff, when Defendants McCoy and Janec returned to the police car he told them that he was having breathing problems and heart palpitations and they arranged to have an ambulance meet them at the police station and take him to the hospital.  (Id.)[5]  Plaintiff states that he was returned to the police station six to eight hours later, after being treated at the hospital, and that Defendant McCoy, while processing Plaintiff's paperwork, made a comment to the effect of "what was being done to the plaintiff was not right and that this is not what he joined the police department for."  (Id. at ECF p. 24.)  Plaintiff further alleges that Detective Lisa Moran, who had been involved in an arrest of Plaintiff on November 3, 2010, told Plaintiff that "[y]ou will not be getting out of jail this time because I will be making sure of it."  (Id.)

Plaintiff's arrest was processed at the 19th Precinct and his pants and shirt from the time of his arrest were vouchered as evidence.  (Def. 56.1 St. ¶ 12.)  Plaintiff alleges that he remained naked (or in his underwear) and handcuffed for approximately ten minutes, before he was given back his "Red, White and Blue Jacket, his underwear, undershirt, and tan boots along

---

[5]   The claims relating to the handcuffs are mentioned for the first time in his opposition and Plaintiff has not pleaded claims for excessive force in this case.

with hospital pajamas to wear." (Pl. 56.1 St. ¶ 12.) (<u>Compare</u> Pl. Mem. In Opp. at ECF p. 26 <u>with</u> Lulich Decl., Ex. B., Tr. 111:9-112:6.)

At the time of his arrest, Plaintiff was on parole and was in violation of the conditions of his parole.[6] (Def. 56.1 St. ¶¶ 4-5, 8.) On November 3, 2010, Plaintiff had been arrested for, among other crimes, criminal possession of stolen property and unlawful use of a motor vehicle. (<u>Id.</u> ¶ 4.) The November 3, 2010, charges were pending in New York County Supreme Court under case number 2010-05448 at the time of the arrest that forms the basis of Plaintiff's allegations in this case. Plaintiff had not reported the November 3, 2010, arrest to his parole officer and had missed at least four mandatory check-ins with that officer by December 13, 2010. (<u>Id.</u> ¶ 5.)[7]

On December 14, 2010, Plaintiff was arraigned for attempted grand larceny in the fourth degree, menacing in the third degree, auto stripping in the third degree, criminal mischief in the fourth degree, and possession of burglar's tools under New York County Criminal Court number 2010NY091520. (<u>Id.</u> ¶ 13.) E.K. and O.M. identified the Plaintiff as the perpetrator of the break-in of their van and signed affidavits attesting to this. Plaintiff's bail was set at $1.00

---

[6]     In 2007, Plaintiff had been convicted of unauthorized use of a motor vehicle in the second degree, and sentenced to two to four years in prison. Plaintiff was incarcerated from October 20, 2007, to August 31, 2010, when he was released subject to the conditions of parole. (Def. 56.1 St. ¶ 3.) As part of his parole conditions, plaintiff was required to report any arrest to his parole officer and to check-in with his parole officer once a week. (<u>Id.</u>)

[7]     In his opposition submission, Plaintiff contends that he did report the November 3, 2010, arrest to his parole officer (Pl. 56.1 St. ¶ 5), and denies that his parole was revoked, but his deposition testimony was to the contrary. <u>See</u> Lulich Decl., Ex. B., Tr. 78:121-22.

because there was a parole hold on Plaintiff.  (Def. 56.1 St. ¶ 13.)[8]  Following his arraignment,

Plaintiff was remanded into custody of the New York City Department of Correction ("DOC")

for violating his parole – not because of the criminal charges arising out of the December 13,

2010, incident. (Id. ¶ 14.)

From December 13, 2010, until March 28, 2012, the charges under New York

Supreme Court case no. 2010-05448 and New York Country Criminal Court docket no.

2010NY091520 were both pending against the Plaintiff as separate actions.  (Id. ¶ 15.)  During

the criminal proceedings in New York County Supreme Court case no. 2010-0558, Plaintiff was

evaluated by at least two mental health professionals and found to be unfit to proceed to trial.

(Id. ¶ 16.)  In July 2011, Plaintiff was transferred to the Mid-Hudson Psychiatric Center, upon an

Order of Commitment, and was treated there until September 2011, when he was transferred

back into custody at Riker's Island. (Id.; Pl. 56.1 St. ¶ 16.)

On March 14, 2012, following a bench trial, Plaintiff was convicted of criminal

possession of stolen property in the fourth degree and unauthorized use of a vehicle in the

second degree, under case number 2010-05448.  (Pl. 56.1 St. ¶ 17; Def. 56.1 St. ¶ 17.)[9]  On

March 28, 2012, Plaintiff was sentenced to two to four years on each charge.  (Def. 56.1 St. ¶

17.)  However, if Plaintiff had been tried and convicted of the charges brought under docket

number 2010NY09150, any sentence would statutorily have been required to run concurrently

---

[8]     Plaintiff disputes that the bail was set at $1.00 because there was a parole hold on
        Plaintiff, but admits that it was set at $1.00.  (Pl. 56.1 St. ¶ 13.)

[9]     Although the Certificate of Disposition proffered by Defendants refers to a
        conviction upon a plea, in the sentencing transcript proffered by Plaintiff in his
        opposition papers, the sentencing judge discusses a bench trial and the evidence
        presented therein.  (See Pl. Mem. in Opp., Ex. A, at ECF pp. 90-97; ECF docket
        entry no. 43-1, at ECF pp. 1-3.)

with, and not have exceeded, the sentence already imposed under case 2010-05548.  Therefore, on April 10, 2012, the charges relating to the instant arrest under case number 2010NY091520 were dismissed as covered by Plaintiff's conviction in case number 2010-05448.  (Def. 56.1 St. ¶ 18.)[10]  Neither Defendant McCoy nor Janec testified in any of Plaintiff's criminal proceedings.  (Id. ¶ 19.)  From December 14, 2010, to March 28, 2012, Plaintiff was incarcerated because he violated parole prior to the December 13, 2010, arrest and from March 28, 2012, he was incarcerated pursuant to his conviction in case number 2010-05448.  (Id. ¶ 22.)  The only period during which Plaintiff was held on account of the charges for which he was arrested on December 13, 2010, was from the time of the arrest until his December 14, 2010, arraignment on the charges.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(a), a Court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that it is entitled to summary judgment, see Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[10]    Plaintiff disputes that the charges were dismissed as being "covered by his felony conviction and sentence" and proffers his own assertion that there was a final determination in his favor.  (Pl. 56.1 St. ¶ 18.)  Defendants' version is, however, corroborated by the disposition documentation proffered by Plaintiff in his opposition and by Defendants in support of this motion – the Certificate of Disposition of the charges arising from the December 13, 2010, arrest notes "DISM-CONVICTION UNRELATED DKT 5448-2010" and a "Record of Court Action" reads in relevant part "Dismissed as covered by Ind. 5448/2010."  (See Pl. Opp. Mem., Ex. R., ECF docket entry no. 44-10, at ECF pp. 14-15; Lulich Decl., Ex. J.)

242, 256 (1986), and a "material fact" is one that might affect the outcome of a suit under governing law.  See Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003).  When reviewing the record, the Court must assess the evidence in "the light most favorable to the [non-moving party]" and resolve all ambiguities and draw all inferences in its favor.  Tufariello v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).  However, the party opposing summary judgment must put forth more than a "scintilla of evidence," Anderson, 477 U.S. at 252, and "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements."  Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1986) (internal citation omitted).  To defeat the motion, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.

Where a plaintiff is proceeding pro se, the Court must read the plaintiff's papers liberally and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted).  However, a "pro se party's bald assertions cannot overcome a motion for summary judgment" and the plaintiff must provide the court with "some basis to believe that his version of relevant events is not fanciful."  Yearwood v. LoPiccolo, No. 95 CV 2544, 1998 WL 474073, at *3 (S.D.N.Y. Aug. 10, 1998) (internal quotation marks and citations omitted); see also Saldana v. Local 32B-32J Serv. Emps. Int'l Union, No. 03 CV 1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("[e]ven a pro se plaintiff [ ] cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint").

Individual Defendants McCoy and Janec

      False Arrest Claim

          Defendants move for summary judgment on Plaintiff's false arrest claim, which is asserted as a Fourth Amendment violation claim pursuant to 42 U.S.C. § 1983, as well as under New York state law.  Plaintiff opposes the motion, arguing that it should be denied because the evidence would support a finding that the arrest was illegal, for lack of probable cause.  A section 1983 claim for false arrest is "substantially the same" in all relevant respects as a claim for false arrest under state law.  See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  Thus, in order to state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); see also Hart v. City of New York, No. 11 CV 4678 (RA), 2013 WL 6139648, at *3 (S.D.N.Y. Nov. 18, 2013).

          "[T]he existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).  "'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  Torraco v. Port Authority of New York and New Jersey, 615 F.3d 129, 139 (2d Cir. 2010) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).  "[T]he probable cause standard is far below that of reasonable doubt."  Husbands v. City of New York, 335 F. App'x 124, 127 (2d Cir. 2009).  "The inquiry is

limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks and citation omitted). Courts must look to the totality of the circumstances, keeping in mind that "probable cause does not require absolute certainty." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).

Police officers do not have an affirmative duty to investigate allegations made by a complaining witness prior to effectuating an arrest. See Jaegly, 439 F.3d at 153. Police have probable cause to arrest if they receive "information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." Miloslavsky v. AES Eng'g Soc'y Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). "The veracity of citizen complaints [sic] who are the very victims of the very crime they report to the police is assumed." Id. Finally, even "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." Waldron v. Milana, __F. App'x___, 2013 WL 4733215, at *3 (2d Cir. 2013) (internal quotation marks and citation omitted).

Here, it is undisputed that Defendants McCoy and Janec responded to a report made by the two complaining victims, O.M. and E.K., regarding a vehicle break-in the vicinity of 85th Street and Madison Avenue. (Def. 56.1 St. ¶¶ 6-7.) O.M. and E.K. told Defendant McCoy that they saw the Plaintiff attempting to break into the van and E.K. told the police that the Plaintiff held up a hammer and told him to "wait a second." (Id. ¶¶ 8-11.) Plaintiff was arrested in the vicinity of Park Avenue and 84th Street, within half an hour of the time of the

break-in, after having been identified by the victims.  (Id. ¶ 8.)  These circumstances are

sufficient as a matter of law to establish the absolute defense of probable cause.  See, e.g., Bacci

v. Fairway Mkt., No. 06 CV 2407 (DAB), 2008 WL 2139132, at *6-7 (S.D.N.Y. May 19, 2008)

(finding probable cause for petit larceny and possession of stolen property where police officers

were informed by employee that the employee observed plaintiff attempting to leave with unpaid

for items concealed on his person).  Plaintiff's argument that probable cause was lacking turns

principally on his contention that, having seen the surveillance video immediately after the

arrest, Defendant McCoy should have understood that the complainants' accusations were

baseless.  As explained above, however, the surveillance video does not exonerate Plaintiff

because, although he is not seen in it, the van door that he is alleged to have broken into and that

side of the van are not visible.  Plaintiffs' arguments thus have no evidentiary basis and are

insufficient to frame a genuine factual dispute as to the existence of probable cause.

Defendants' motion for summary judgment on Plaintiff's federal and state law

false arrest claims as against Defendants McCoy and Janec is granted.  To the extent that

Plaintiff also asserts claims of false imprisonment, they are dismissed as well, because false

arrest and false imprisonment are synonymous under New York law.  See Posr v. Doherty, 944

F.2d 91, 96 (2d Cir. 1991).

Unlawful Search Claim

Plaintiff appears to allege that he was subject to an unlawful strip search

following his arrest, but he does not assert this cause of action as a separate claim.  (See, e.g.,

Compl. ¶ 4; Pl. Mem. in Opp. at ECF p. 25.)  Reading Plaintiff's papers in the light most

favorable to him, however, the Court assumes that Plaintiff intends to assert such a claim.

According to Plaintiff, after his arrest, while he was being processed, members of the N.Y.P.D.'s Emergency Services Unit collected his clothing and then left him alone and naked or with underwear only for approximately ten minutes before bringing him some hospital pajamas and telling the Plaintiff to put back on his socks, boots and heavy jacket.  (Pl. Mem. in Opp. at ECF p. 26.)[11]

Even drawing all inferences in Plaintiff's favor, the search of Plaintiff was justified as a matter of law, both as a search pursuant to a lawful arrest and as a reasonable penological measure to protect the safety of the other inmates.  See Illinois v. Lafayette, 462 U.S. 640, 645-46 (1983) ("[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification"; "[a]t the stationhouse, it is entirely proper for the police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed."); see also Florence v. Board of Chosen Freeholders of County of Burlington, 132 S. Ct. 1510 (2012) (holding that the practice of conducting a strip search on all arrestees, regardless of severity of the underlying offense or individualized suspicion of possession of contraband, does not violate the Fourth Amendment).  "[I]f an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status. . . . The governmental interests underlying a stationhouse search of the arrestee's person and possessions may in some circumstances be even greater than those supporting a search immediately following arrest."  Lafayette, 462 U.S. at 645.  However, the Fourth Amendment requires that strip searches of inmates be reasonable, see Hodges v. Stanley,

---

[11]    Defendants argue that neither of the named Defendant officers conducted the search, but this is a disputed issue of fact, as Plaintiff claims that the Defendants were personally involved or, at the very least, failed to intervene.

712 F.2d 34, 35 (2d Cir. 1983) (per curiam) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979))

and that "the need for a particular search [ ] be balanced against the resulting invasion of

personal rights," <u>Florence</u>, 132 S. Ct. at 1516 (2012) (citation omitted).  In determining whether

a particular strip search is reasonable, a court "must consider the scope of the particular

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

which it is conducted."  <u>Bell</u>, 441 U.S. at 559 (collecting cases).

   Here, there was a reasonable suspicion that Plaintiff was engaged in criminal

activity as he was found with burglar's tools and a knife at the time of his arrest near the vicinity

of the crime, and was identified by two complaining witnesses.  After his arrest, it was

reasonable to search Plaintiff when processing him, both for evidence from the alleged crime and

for safety reasons. <u>Arnold v. Westchester Cnty.</u>, No. 09 CV 3727, 2012 WL 336129, at *11

(S.D.N.Y. Feb. 3, 2012) ("prison officials have an obligation to take reasonable measures to

protect the safety of the prison's inmates."), <u>report & rec</u>. <u>adopted by</u> 2012 WL 841484

(S.D.N.Y. Mar 13, 2012). The approximately ten-minute delay in which Plaintiff was naked or

wearing underwear that Plaintiff contends occurred while he was waiting for his clothing to be

returned, while likely unpleasant for the Plaintiff, does not make the search unreasonable or

unlawful.  Defendants' motion for summary judgment is granted as to Plaintiff's unlawful search

claim as against Defendants McCoy and Janec.

   <u>Malicious Prosecution Claim</u>

   Plaintiff also asserts a section 1983 claim for malicious prosecution in violation

of his Fourth Amendment rights.  The law imposes "a heavy burden on malicious prosecution

plaintiffs."  <u>Rothstein v. Carriere</u>, 373 F.3d 275, 282 (2d Cir. 2004) (citation omitted).  To

prevail on a section 1983 claim for malicious prosecution, a plaintiff must first establish the elements of a malicious prosecution claim under state law.  See, e.g., Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989).  "To recover on a claim of malicious prosecution under New York law, a plaintiff must establish four elements: that (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice."  Russo v. State of N. Y. , 672 F.2d 1014, 1018 (2d Cir. 1982) (internal citations omitted).  In addition to satisfying the state law elements, for a section 1983 claim to succeed there must also be a showing of "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  See Rohman v. New York City Transit Authority (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000).  Defendants are entitled to summary judgment dismissing Plaintiff's malicious prosecution claim for three principal reasons: there is no evidence that Defendants "initiated" the prosecution within the meaning of the relevant legal standards; there was probable cause to support the prosecution; and the prosecution was not terminated in Plaintiff's favor.

"Initiation in [the context of malicious prosecution] is a term of art," involving more than merely reporting a crime and giving testimony.  "It must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act . . . One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding."  Rohman, 215 F.3d at 217 (internal quotation marks and citations omitted).  An arrest alone "cannot serve as the predicate deprivation of liberty required by the Fourth Amendment because it occurred prior to [a defendant's] arraignment and without a warrant."  Singer v. Fulton County

Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995).  "Once a criminal defendant has been formally

charged, the chain of causation between the officer's conduct and the claim of malicious

prosecution is broken by the intervening acts of the prosecutor, thereby abolishing the officer's

responsibility for the prosecution."  Jouthe v. City of New York, No. 05 CV 1374 (NGG), 2009

WL 701110, at *11 (E.D.N.Y. March 10, 2009) (internal quotation marks and citation omitted).

　　　　　Plaintiff argues that Defendant McCoy initiated the prosecution against the

Plaintiff by signing the criminal complaint and that Defendant Janec helped to initiate the

prosecution by signing the supporting affidavit.  However, although McCoy swore out the

criminal court complaint, the information regarding Plaintiff's alleged activities was obtained

from the two complaining victims.  Merely signing the criminal complaint and/or reporting the

material information known to the officer does not override the independent prosecutorial

judgment of the assistant district attorney in deciding whether to bring charges.  Plaintiff also

seems to allege that Defendants McCoy and Janec initiated the prosecution by withholding the

security video from the District Attorney's Office  Office, when the video would have allegedly

exonerated him.  However, there is no evidence in the record to support this contention.  In fact,

the Voluntary Disclosure Form, signed by the assistant district attorney, indicates that the

District Attorney's Office was in possession of the video.  (See Lulich Decl., Ex. N. "Voluntary

Disclosure Form.")  There is also no evidence to support Plaintiff's contention that the video

exonerates him.

　　　　　Even if Defendants McCoy and Janec could be found to have "initiated"

Plaintiff's prosecution, the "existence of probable cause is a complete defense to a claim of

malicious prosecution in New York."  Savino, 331 F.3d at 72 (2d Cir. 2003).  "The

determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, 'except that [a claim for malicious prosecution] must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest.'" Danielak v. City of New York, No. 02 CV 2349, 2005 WL 2347095 at *10 (E.D.N.Y. Sept. 26, 2005) (internal quotation marks and citation omitted), aff'd, 209 F. App'x 55 (2d Cir. 2006). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). Here, no new facts came to light after Plaintiff's arrest, and both E.K. and O.M. remained consistent in their identification of plaintiff and their accusations against him. N.Y.P.D. records further show that Defendant McCoy vouchered evidence (e.g. screwdrivers, a hammer etc.) that supported the complaining victims' allegations following plaintiff's arrest, suggesting that the strength of the evidence against plaintiff increased after his arrest. Nor does the record support Plaintiff's allegation that the security video proves his innocence.

    As Plaintiff has not established the first two elements of his malicious prosecution claim, the claim necessarily fails. However, there are also no facts from which the Court could infer that defendants were motived by actual malice, see, e.g., Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002) (affirming grant of summary judgment for defendants after the plaintiff failed to present evidence of actual malice), or that the proceedings were terminated in Plaintiff's favor, which only occurs when the final disposition of the case: (1) involves the merits and (2) tends to indicate the accused's innocence as opposed to a dismissal of cumulative charges. See, e.g., Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997). "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a

malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." Fulton, 289 F.3d at 196.  As explained above, the record indicates that the charges were dismissed as duplicative for sentencing purposes of charges on which Plaintiff had already been convicted and sentenced.  That outcome is not indicative of Plaintiff's innocence of the dismissed charges.  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution against Defendants McCoy and Janec and that claim is dismissed.

Municipal Liability

Plaintiff also asserts a claim under 42 U.S.C. § 1983 against the City of New York.  In order to state a claim against a municipality under section 1983, a plaintiff must adequately allege that a deprivation of his constitutional rights was caused by an official policy or custom of that municipality.  Monell v. Dep't of Social Servs., 436 U.S. 658, 692-94 (1978).  Because Plaintiff has failed to present evidence that demonstrates that his constitutional rights were violated, the city is entitled as a matter of law to summary judgment dismissing Plaintiff's section 1983 claims against it.  See Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable[;] Monell does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy").  If a plaintiff fails to plausibly allege that municipal employees violated his or her constitutional rights, the plaintiff's Monell claim "necessarily fails as well" as against the municipal entity.  Kajoshaj v. New York City Dep't of Educ., ___F. App'x___, 2013

WL 5614113, at *4 (2d Cir. Oct 15, 2013).[12]  Plaintiff's state law claims against the city based on respondeat superior or agency theories, for false arrest, false imprisonment and malicious prosecution are also dismissed, for lack of evidence indicating commission of the underlying violations.

Remaining State Law Claim

Plaintiff's papers may be read liberally to assert a state law claim for intentional infliction of emotional distress.  As the Court is granting summary judgment dismissing all of Plaintiff's federal causes of action, the Court declines to exercise jurisdiction of any remaining state law claims.  See 28 U.S.C. § 1367(c)(3); see also, Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("where the federal claims are dismissed before trial, the state claims should be dismissed as well").

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. Plaintiff's federal and state law claims for false arrest, false imprisonment, and malicious prosecution, and any federal claim for illegal search, are dismissed.  The Court declines to exercise supplemental jurisdiction of any remaining state law claims, which are dismissed without prejudice to litigation in state court.

This Memorandum Order resolves docket entry number 30.

---

[12]     Furthermore, aside from naked boilerplate allegations against the City of New York in his opposition, the Plaintiff has also not sufficiently demonstrated that the City of New York had a custom, policy, or practice of conducting unlawful arrests, searches, or engaging in malicious prosecution so as to sustain a section 1983 claim.

The Clerk of Court is hereby requested to enter judgment in Defendants' favor and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.


Dated: New York, New York
       September 30, 2014


                                                     /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge